Thomas McLean v. Kenneth McKee, argument not to exceed 15 minutes per side. Mr. Becker for the opponent. Good morning. This is a case that I am very much aware of, and have been very much aware of, and it's been a very significant part of my life. My way of perspective, I've known Thomas McLean since he was a child. He was a hockey player, playing together with my son on a hockey team. On this unfortunate date, he had just obtained a job, and he over-imbibed apparently, and there was a fatal collision. Since I've been a lawyer, there's been a transition in the law, as this court is very much aware of, in many states, concerning how driving under the influence is looked at. Michigan has been in the forefront, and as it turns out, the wife of the deceased was an active member of Mothers Against Drunk Driving. In this case, second-degree murder charges were brought against Mr. McLean, and when I was taking the bar exam, if I had answered at that time that such conduct would constitute second-degree murder, it would have been marked incorrect. No, I know. I'm just for background here. I can answer any questions if you want to tell me to shut up. The way the Michigan courts have looked at it, as other states have, is that when you intentionally decide to get drunk, and you get into the car, that that is second-degree murder, if there is a fatal collision, because that's the necessary attempt. So, what we have here is that Mr. McLean, it was a horrific collision. Mr. McLean's head swelled to about double the size. He was brought to a hospital, and Mr. McLean has no memory of this collision. They didn't arrest him because of that bit of hand, right? Well, he was arrested in the sense that Lieutenant Wickersham, who is now the Macomb County Sheriff, he's the highest-ranking officer, he went to the hospital, and according to Captain Wickersham, Mr. McLean gave a knowing and intelligent consent to have his blood tested, and his blood was tested. That's not an arrest, is it? Well, there was an officer there. I don't think Mr. McLean was in a position to leave if he had the physical ability to leave, but... But that has never been the timing of the court if he was arrested at that time, right? No, no, but it's relevant in the course of subsequent proceedings that Captain Wickersham at that time found that Mr. McLean was able to give a knowing and intelligent consent. There was a criminal complaint filed in the district court, and that was filed in March of 1998, and this is the way you start cases. This is the way you start cases in Michigan, as in many states, you file a complaint. So, look, it's part of the Michigan Rules of Criminal Procedure, and this complaint was never dismissed, and it was based on this complaint. It was never amended. It was based on this complaint that in 2005, in August of 2005, that Mr. McLean voluntarily came back from Florida to face these charges. Now, what happened in the interim was this. Mr. McLean, because of his head injuries, principally, and also his physical injuries, he was placed in a rehabilitation facility under 24-hour care. I'm sorry. In Michigan. He was in Michigan until, I think, 2004, where his family moved down there, and he moved down there with them at that time. Well, he left, but he was still under their supervision. There was contact with them. So, the question is, was there a violation of constitutional rights? What happened was that there was an immediate investigation by a detective by the name of Mount, who was certified in accident reconstruction. However, because of the lapse of time, all the vehicles were lost. The expert who Mount delegated to check the vehicles, a person by the name of Prebish, he died. Now, significantly, Prebish, in his report, noted that there was evidence of breaking. Now, somebody... There are a lot of facts here. Let me try to get you back to the law. This is a case under EDFA. We have to decide whether the state of Michigan's courts violated a clearly established Supreme Court precedent. Below, you raise and argue issues under the Sixth Amendment, the speedy trial, and under the Fifth Amendment, due process. Those are different standards. In our case, this is pre-arrest delay, pre-couple of factors. Sixth Amendment is after the initiation of arrest. As I understand it, the district judge, Ted Rosen, ruled against you on both grounds and granted a certificate of appealability only on due process. Your brief is entirely established in terms of the Sixth Amendment speedy trial clause. So, can you... Yes, Your Honor. Can you give us your argument as to what the Michigan Court of Appeals, the last reasoned decision, how they violated a clearly established Supreme Court precedent? Well, the Michigan Court of Appeals said that because the complaint was filed in 1998, because it was filed in 1998, there was no violation of speedy trial. So, it's like now, as I read this brief... You're saying because it was filed in 1998, there was no violation of speedy trial, or because it was only a complaint rather than an indictment or an arrest, that didn't start the speedy trial? No. They were saying because it was filed in 1998, there was no violation of speedy trial. We're talking here as though there's an elephant in the room. I'm talking about something that happened in 1998 where you have factual witnesses like Mr. Raymond Dine, who gave a favorable statement, and this has all been preserved on the record, where you have the breaking apparatus that, according to one of the state's own witnesses, showed evidence of breaking which would negate an intentional action, because if you're trying to break, it's not second-degree murder if you're trying to avoid the accident. Are you saying that the state took advantage of it on purpose so that they could get back to the prosecution? No, of course not. What I'm saying is that if you read Lt. Donovan, who at the time of our evidentiary hearing, which I didn't know was going to be an evidentiary hearing, I filed a motion, and they said, oh, Lt. Donovan, he's in charge of security for the courthouse now. Get on the stand. I'm sorry, this is the evidentiary hearing before... The trial court. In New Michigan. Right, before our trial, which we did go to trial. So we asked Lt. Donovan, well, was there a complaint file? He said, yeah, there was a complaint file. Why didn't you proceed on this complaint? Well, because we would have had to pay for his medical treatment because the taxpayers would be responsible. Well, that's your characterization. It's true. But you did helpfully give us the whole transcript. I did. And in which you asked who would have had to pay for it, the county taxpayers. That's a true statement of fact. You then have a leading question. Is your willingness to save the taxpayers' money overriding the Constitution? And he doesn't say yes. He says that decision was made by the judge, sir. So that's not an admission that they did save money. We were talking here about state action, but the point is, is that what happened after that? What happened after that is, over the course of seven years, there were five letters written to Breaux Rehabilitation Center that were answered by Breaux, who is the head, the owner of Breaux Rehabilitation. And he indicated, yes, he's still here. He's still under, he's under treatment. Now, what our position is, is that what happens when you have somebody who has a mental problem or who has serious injuries? Well, normally what happens is that you follow the law of Michigan, which is very similar, the Mental Health Code. What does the Mental Health Code say? The Mental Health Code says if there's an issue of mental competence, which, by the way, it's uncontradicted, it's uncontradicted. There was never any claim made at trial or at pretrial that Mr. McClain was not competent to stand trial. He never asked for any delay. But the delay was beneficial to him. Why was it? I don't think it was beneficial because we eventually retained an expert witness who happened to have worked for the state of Michigan. Did you ever make a motion for Steve McGrath? Yeah, of course we did. That's why we had that hearing that we just alluded to. Way back. Yes, way back. That's when Donovan testified. It's in the brief. This is a pure case. Well, let's just get to the answer to this. When you say you made a motion for Steve's trial, was that after he was arrested in 2005? Yes. I thought you said it was after he was arrested. We didn't know that they had filed a complaint. All we knew is that there were inquiries from the sheriff. All we knew is there was a horrific collision. We didn't know if the decedent had caused the collision because, remember, my guy, Mr. McClain, who's served 10 years by now, he doesn't have a recollection of this. So the point I'm making is that it's up to the state. Now, you have to reread the Doggett case. That's a critical case here because at Doggett, the guy actually left the country, but there was opportunity to proceed. Now, there's a reason we had a speedy trial, and this is a perfect example of whether it's characterized as due process. I basically merge my arguments. It's like, as I look at it, it's like there's an elephant in this room. Are you going to ask me to push it or pull it? I mean, I'm talking about the facts. There are two different sets of laws. Sixth Amendment and Fifth Amendment. I'm not saying it was intentional. I'm saying they apparently came to the conclusion because when they went to the hospital, and this is from the mother, his head was swollen, that he was a vegetable or something, and they decided to let this go. So what happened when they let it go? The cars are gone. The evidence map is gone. The writing mechanism is gone. Of course, that happens a lot of times when there's no intentional act. Right. That's why we have speedy trials. Going back to the law. Of course. You mentioned Doggett. Now, Doggett was a case in which there was an indictment, and then the arrest followed a considerable period of time later, right? Correct. There's also a lot of parties, Supreme Court and otherwise, that generally speedy trials have against drug at the time of arrest, right? Under the U.S. v. Merriam. In certain circumstances like the Doggett circumstance, right? Well, I don't know. U.S. Merriam says it runs from indictment, which is the same as if it were. U.S. Merriam says it runs from arrest, and Doggett is the case that has the indictment preceding the arrest, so you take into account the time from indictment of formal amputation forward. And that's not this case. So what is it in Doggett that would have, what is it about the Michigan Court of Appeals in you? Well, let me see this. Maybe you let me finish the question. Oh, I'm sorry. What is it about the Michigan Court of Appeals opinion that makes it contrary to Doggett? It's contrary to Doggett in every respect because it totally distorts what the law is. Now, the law is, and you have a lot of good people here that will be working with you. The law is that once the state decides to commence charges, whether it's done by indictment, and we all know that federal prosecutors always dismiss indictments when they don't think they can finish it on time. But anyways, once it's started, that's what invokes it. To get to that conclusion, that criminal complaint is that starting point. That's not apparent in the face of Doggett. You have to go through some other steps, right? You have to analogize, you have to look at what the criminal complaint is, right? Well, I did this already. Can I just relate? In the district court, the district court did not say when the complaint was started. It conveniently left that out of the argument because this is a very uncomfortable case. It's going to be very hard for this court to say there was no violation of constitutional rights. What is it in Doggett, looking at the text of Doggett, that is supposed to lead the state appellate court to define that clearly established Supreme Court precedent is that the time begins to run with the criminal complaint? Doggett cites U.S. v. Merriman for that proposition. No, really, it's true. In the district court, I had to file a motion for reconsideration because this was filed in 2009. When I filed my reconsideration, I said, excuse me. Counsel, your time is expired. Okay, you're going to save me a minute for later? Did you ask for one? It says one. Is that accurate? No, but I'd like to. It says one thing. It means he's exceeded his time. That's how much you know. You heard him stop, right? I was a stop. That's how much you know. Thank you. Thank you. Your Honor, as a matter of please, the court applied a Spanghardt Claim, Assistant Attorney General for the State of Michigan, on behalf of Ms. Farley Warden, with respect to her requesting an affirmance. I'm still not entirely clear whether this is a 60-minute claim or a two-process claim, but I think as near as I can figure, this appears to be a speedy trial claim. And since it is a speedy trial claim, it's not properly before this court, because he doesn't have a certificate of appealability on a speedy trial claim. So for that reason alone, I think I can sit down, but I'll speak more. There was a lot said about speedy or weird legal work since we're here, since I drove all the way here. And I think, Judge Gibbons, to your questions about Doggett and Marion, the law is clear that it runs from the earliest of arrest, information, or indictment. Are there some other documents that could fall within that? I think Doggett uses the phrase something like formal accusation. Formal accusation. I think that's Doggett. I know there is a Supreme Court case that says there are other formal accusations. It has to be in the manner of an information or indictment. It has to be something that you could bring someone to trial on. I thought something important that my brother said sort of near the end of the argument is, he said, we didn't even know that a complaint was filed. And so when you look at these cases and all the considerations that go into why is speedy trial important, and for that matter, why is this due process right about pre-arrest delays, because it puts the defendant under a cloud and you're under this sort of oppressive delay. If you don't even know a complaint was filed, it can't cause that kind of problems that we're talking about. Did any of these inquiries with the rehabilitation place say that the defendant was charged with a complaint that was filed or anything like that? I don't think so. I think there were only inquiries to say, that's in the record, so I don't recall that offhand. Letters from the sheriff? Letters from the sheriff. I think they were basically more sort of just asking, it wasn't sort of, you are on notice that he is charged and we want to bring him. It was just, what is his conditions? What is his status? Well, the sheriff's a nice guy, but he doesn't usually inquire into the health of all of the citizens of this county. Sure. And certainly, I mean, McLean's aware at the time. As soon as he's aware, as soon as he's confident enough to be aware of anything, you don't kill somebody in a traffic accident without having some awareness that the police are probably going to be interested in talking to you, whether it's ultimately accidental, whether it is murder or manslaughter or whatever it is, a beating. So you have some kind of notice, but a complaint, and we outlined this in the brief, a complaint, you can't bring someone to trial on a complaint. You have a complaint. A complaint, to be clear, that would not ordinarily become valid to a defendant, a potential defendant, until he is in fact arrested on it, right? Right, Your Honor. An indictment, by contrast, you know, it might be, or an information, it might be accompanied by an arrest warrant, but it might not be the defendant, for example, had it written by a perilous offender or whatever, right? Right, Your Honor. And an information, I'm sorry, did you have, did you have more? Okay. An information, which is the usual mode. That's the way you precede the patient. Exactly, that's the normal, that's the normal way, and that is the way it was preceded in this case, and an information is always preceded by either a preliminary examination where a judge determines whether there's probable cause, a district judge determines whether there's probable cause to believe that a crime has been committed and the defendant committed the crime, or a waiver of a preliminary examination. So the defendant has to know, there has to be some knowledge by the defendant that the information can't issue without one of those two proceedings happening. So, so yeah, the information, absolutely, even if Michigan called it something else so it doesn't fall under arrest information and indictment, the nature of the proceeding, it falls under other formal accusation and information, whatever you call it. It is another formal accusation. A complaint and an arrest warrant are not, and no, and no, no Supreme Court decision has ever held that it is. No decision that I'm aware of at all, even though he needs a Supreme Court decision, has held that that is the case. So the fact that the claim is uncertified, and the fact that it is the earliest arrest information indictment, which in this case was the last, those two are enough to dispose of the Sixth Amendment claim. As to the due process claim, which is the claim certified for appeal, the precedent is clear both from the Supreme Court and from this Court, that there has to be shown some deliberate delay in order to gain a tactical advantage by the prosecution. And my brother's conceded that there was no deliberate delay. Yeah, and he said, he said, he said of course, I think he said of course not, but he certainly said that there was no deliberate delay. And so that disposes of that claim. And they are separate claims. It is not, they are parts of the same elephant, right? They are, there's separate amendments, there's separate standards of law, separate tests to be applied. This is not a case, I was reminded of Jackie King, which I know, Judge Gibbons, that you're familiar with a recent case of this court. And the dissent in that case is talking about, well, is it, it's a Boykin claim and a Santabello claim, and I think Judge Keith said in dissent, well, really the Boykin claim is broad enough to eclipse the Santabello claim, so really it ends up being both. And of course, that was incorrect, but you can't even make that argument in this case. And they are, there's a pre-arrest delay claim, there's a Sixth Amendment speedy trial claim. But he is instructive in terms of paying attention to exactly what the certificate of appealability is, but it's kind of not so on point because it involves a situation in which the majority at least thought that our court had granted a certificate of appealability on an issue that had never previously been in the case. Exactly right, which is why I talked about the dissent more than the majority of people, because I don't think it's... But that was not the case at that time. Of course, it quickly emerged as the major theory in the case, that we had granted this certificate of appealability. Yes, and in this case, that's not an issue. Of course, the certificate of appealability was based on a claim, was granted on a claim that was raised and decided by the district court. But as you see in the district court's analysis, the two claims are decided in separate sections. In our answer, not that that's at all dispositive, but we answer the claims in separate sections of our answer because they are separate claims. So, if this is a Sixth Amendment claim, it's uncertified and meritless because the time from arrest to trial was not over the law, it was about six months. If this is a due process claim, it's abandoned as far as being not briefed and it's without merit because there was no deliberate attempt by the prosecution to gain a tactical advantage. Are there any other questions? Other than that, I'd rest. I thank you.